**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-03285-NYW-MDB

TLINGIT HAIDA TRIBAL BUSINESS CORPORATION,

 Plaintiff/Counterclaim Defendant,

v.

ONEPROMOM, LLC d/b/a COMBS CONSULTING LLC,

 Defendant,

and

RHIANNA COMBS,

 Defendant/Counterclaim Plaintiff/Crossclaim Plaintiff,

v.

RICHARD RINEHART, JR.,

 Crossclaim Defendant.

---

**ORDER ON MOTION TO DISMISS**

---

This matter is before the Court on the Partial Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion" or "Motion to Dismiss"). [Doc. 34]. The Motion is fully briefed. [Doc. 42; Doc. 48]. For the reasons set forth in this Order, the Motion to Dismiss is respectfully **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

The following facts are drawn from the First Amended Complaint (the "Amended Complaint"), [Doc. 24], and are undisputed unless otherwise noted. Plaintiff Tlingit Haida

Tribal Business Corporation ("Plaintiff" or "THTBC") is a corporation that "manages a diverse portfolio of companies" in "the highly competitive government contracting space." [*Id.* at ¶¶ 1, 11, 18]. Its "Capture" team "obtain[s] information about potential business opportunities," and the "Proposal" team then "steps in to draft the bid documents, interface with the potential client throughout the bidding process, and address any questions or issues the potential client has while it evaluates the bids." [*Id.* at ¶¶ 15–16].

In 2007, Defendant Rhianna Combs ("Ms. Combs") began working as an administrative support worker for Kira Inc., which is a "federal contractor that provide[s] facilities maintenance and base operations support for the United States and overseas." [*Id.* at ¶¶ 12, 50]. In 2016, THTBC acquired Kira. [*Id.* at ¶ 12]. As part of that acquisition, Ms. Combs transitioned to a part-time contracts administrator role. [*Id.* at ¶ 51]. In 2017, Ms. Combs transitioned to become a full-time contracts compliance administrator and then later switched roles to become a contract compliance and corporate specialist for T&H Services LLC ("T&H"), a wholly owned subsidiary of THTBC. [*Id.* at ¶¶ 13, 51–52]. "On September 21, 2018, Ms. Combs transitioned to working for THTBC . . . directly in the same role." [*Id.* at ¶ 53].

The day before Ms. Combs transitioned to working for THTBC directly, Ms. Combs executed a confidentiality and non-solicitation agreement (the "Agreement"). [*Id.* at ¶¶ 23, 55]. The signatories to the Agreement are Ms. Combs and T&H. *See* [*id.* at ¶ 111; Doc. 24-1 at 6].[1] The Agreement provides, among other things, that Ms. Combs "will not

---

[1] In ruling on a motion to dismiss under Rule 12(b)(6), the Court can consider "documents that a plaintiff (1) attaches to [the] complaint; (2) incorporates by reference in [the] complaint; or (3) refers to in [the] complaint and that are central to [the] complaint and indisputably authentic." *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) (quotation omitted). The Agreement is attached to the Amended

disclose, use, lecture upon or publish any of" T&H's confidential or proprietary information.  [Doc. 24 at ¶¶ 25–28; Doc. 24-1 at 2].  The THTBC Employee Handbook also contains "instructions" regarding the protection of THTBC's confidential and proprietary information.  *See* [Doc. 24 at ¶¶ 41–47].[2]

Ms. Combs progressed in her employment with THTBC and eventually was named the vice president of proposals.  [*Id.* at ¶ 56].  During her employment with THTBC, Ms. Combs was "provided with significant confidential and trade secret information."  [*Id.* at ¶ 58].  But after becoming "extremely resentful" of being twice denied a promotion, Ms. Combs "began surreptitiously forwarding emails containing THTBC Parent's confidential and trade secret information to her personal email address."  [*Id.* at ¶¶ 69–70]; *see also* [*id.* at ¶¶ 71–79].  In early 2025, Ms. Combs was laid off through a reduction in force.  [*Id.* at ¶ 68].

Ms. Combs then created a company called "Combs Consulting LLC" ("Combs Consulting").  [*Id.* at ¶ 87].  Combs Consulting's website advertised that it possessed "proprietary knowledge span[ning] a wide range of high-value installations" and offered "legally shareable, highly strategic knowledge to clients ready to compete—and win."  [*Id.*

---

Complaint and is properly considered in ruling on the Motion to Dismiss.

[2] Defendant has attached what it claims to be THTBC's Employee Handbook.  *See* [Doc. 34 at 9; Doc. 34-1].  Typically, the Court would consider the Employee Handbook in ruling on the Motion to Dismiss because it is referenced in Plaintiff's Amended Complaint, appears to be central to Plaintiff's claims, and no Party disputes the Handbook's authenticity.  *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025).  Indeed, Plaintiff even quotes from the document filed by Defendants in its Response.  *See* [Doc. 42 at 8–9].  However, the Amended Complaint alleges that the Employee Handbook contains certain language that does not appear in the document filed by Defendants.  *Compare* [Doc. 24 at ¶¶ 42–47], *with* [Doc. 34-1].  Because the Court cannot verify the accuracy of the document filed by Defendants, the Court declines to consider it in ruling on the Motion to Dismiss.

at ¶ 90]. Plaintiff alleges that this "legally shareable" "proprietary knowledge" was "confidential and trade secret information and documents that Ms. Combs had obtained and retained from THTBC . . ., and which she used, disclosed, or planned to use or disclose, for or to Combs Consulting's clients." [*Id.* at ¶ 93]. In August 2025, Ms. Combs began working for CBRE Government & Defense Services, a direct competitor of THTBC. [*Id.* at ¶¶ 105–06].

THTBC initiated this action on October 17, 2025, [Doc. 1], and filed the Amended Complaint on February 6, 2026, [Doc. 24]. It asserts eight claims: (1) a breach of contract claim against Ms. Combs ("Claim One"), [*id.* at ¶¶ 109–23]; (2) a breach of fiduciary duty claim against Ms. Combs, [*id.* at ¶¶ 124–29]; (3) a trade secret misappropriation claim under the federal Defend Trade Secrets Act ("DTSA") against Ms. Combs and Combs Consulting ("Claim Three"), [*id.* at ¶¶ 130–44]; (4) a trade secret misappropriation claim under the Colorado Uniform Trade Secrets Act ("CUTSA") against Ms. Combs and Combs Consulting ("Claim Four"), [*id.* at ¶¶ 145–59]; (5) a claim for tortious interference with prospective business relations against Ms. Combs and Combs Consulting, [*id.* at ¶¶ 160–66]; (6) a civil theft claim against Ms. Combs and Combs Consulting ("Claim Six"), [*id.* at ¶¶ 167–78]; (7) a claim under the Colorado Consumer Protection Act ("CCPA") against Ms. Combs and Combs Consulting ("Claim Seven"), [*id.* at ¶¶ 179–96]; and (8) a Lanham Act claim against Ms. Combs and Combs Consulting, [*id.* at ¶¶ 197–215].

Ms. Combs and Combs Consulting (collectively, "Defendants") filed an Answer on February 27, 2026, through which Ms. Combs asserted counterclaims against THTBC and crossclaims against Richard Rinehart, Jr., THTBC's CEO. [Doc. 32 at 1–2]. Specifically, Ms. Combs asserts the following counterclaims against THTBC: (1) sex

4

discrimination under Title VII and the Colorado Antidiscrimination Act ("CADA"), [*id.* at 24 ¶¶ 58–66]; and (2) retaliation under Title VII and CADA, [*id.* at 25 ¶¶ 67–71]. She asserts the following crossclaims against Mr. Rinehart: (1) aiding and abetting sex discrimination under CADA, [*id.* at 25 ¶¶ 72–79]; (2) aiding and abetting retaliation under CADA, [*id.* at 27 ¶¶ 80–86]; and (3) intentional interference with a contract, [*id.* at 28 ¶¶ 87–93]. The counterclaims and crossclaims are not at issue in this Order.

Ms. Combs and Combs Consulting now move to dismiss Claims One, Three, Four, Six, and Seven for failure to state a claim under Rule 12(b)(6). [Doc. 34]. The Motion is fully briefed and ripe for resolution.

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quotation omitted). The plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

## ANALYSIS

### I.    Claim One:  Breach of Contract

Defendants move to dismiss the breach of contract claim against Ms. Combs on

the basis that there is no privity of contract between Ms. Combs and THTBC. [Doc. 34 at 4]. They assert that, because THTBC is not a party to the Agreement, it cannot sue Ms. Combs for breaching the Agreement. [*Id.*]. They also argue that to the extent Plaintiff relies on an assignment theory, Plaintiff's allegations do not plausibly establish that T&H—as the signatory to the Agreement—assigned the contract to THTBC. [*Id.* at 6–7].[3]

In its Response, THTBC asserts that "at the pleading stage, THTBC need not prove its ultimate contract-enforcement theory. Rather, it need only allege facts making enforcement plausible, which it has done." [Doc. 42 at 5]. Specifically, it contends that its allegations that "all parties understood and confirmed by their actions . . . that the Agreement was intended to be between Ms. Combs and THTBC," *see* [Doc. 24 at ¶ 111], and that, "[a]lternatively, by transitioning Ms. Combs's direct employment from T&H to THTBC . . . on September 21, 2018. . ., THTBC . . . constituted a successor or assignee of T&H for purposes of the Agreement," [*id.* at ¶ 112], are "more than sufficient to survive dismissal," [Doc. 42 at 5]. This argument is not supported by any legal authority. *See* [*id.*]. THTBC also argues that (1) the Amended Complaint "plausibly supports enforcement of the Agreement through reformation based on mutual mistake" or "a scrivener's error," [*id.* at 6–7 (emphasis omitted)], and (2) Ms. Combs has contractual duties to THTBC based on the Employee Handbook. [*Id.* at 8].

"Generally, only parties to a contract may seek to enforce its terms." *Bewley v. Semler*, 432 P.3d 582, 586 (Colo. 2018). "In other words, a party must have privity of

---

[3] Defendants also argue that THTBC is not a third-party beneficiary of the Agreement, so it cannot enforce the Agreement on that basis. [Doc. 34 at 7]. Because Plaintiff does not argue that it is a third-party beneficiary to the Agreement, *see* [Doc. 42], the Court does not address this argument.

contract to sue for breach of that contract." *Id.* at 586–87.  Here, the Amended Complaint alleges—and the face of the Agreement confirms—that "the parties named on the Agreement are Ms. Combs and T&H." [Doc. 24 at ¶ 111; Doc. 24-1 at 1, 6].  Indeed, the Agreement expressly states:  "This Agreement is made by and between T&H Services LLC, a Colorado Limited Liability Company (the 'Company'), and Rhianna L. Combs ('Employee')."  [Doc. 24-1 at 1].

When interpreting a contract, courts "giv[e] words used their plain and ordinary meaning unless the intent of the parties, *as expressed in the contract*, indicates that an alternative interpretation is intended."  *Figuli v. State Farm Mut. Fire & Cas.*, 304 P.3d 595, 598 (Colo. App. 2012) (quotation omitted and emphasis added).  Plaintiff does not point the Court to any language in the contract itself demonstrating the contracting parties' intent that "the Agreement was intended to be between Ms. Combs and THTBC," as the Amended Complaint asserts.  *See* [Doc. 24 at ¶ 111].  And Plaintiff's allegation about the contracting parties' intent "do[es] not overcome contradictory statements in the text of [the] contract attached to" the Amended Complaint.  *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014). While Plaintiff is correct that it need not prove its case at the pleading stage, it must nevertheless "allege sufficient facts to nudge [its] claims across the line from conceivable to plausible."  *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1158 (10th Cir. 2021) (cleaned up).  It has not met this burden here.

Plaintiff also alleges that "by transitioning Ms. Combs's direct employment from T&H to THTBC . . . on September 21, 2018 (the very next day after the Agreement was signed), THTBC . . . constituted a successor or assignee of T&H for purposes of the

7

Agreement, pursuant to Sections 9(F)–(G)." [Doc. 24 at ¶ 112].[4] Plaintiff argues in its Response that this allegation, "together with the surrounding facts pleaded in the [Amended Complaint]," is sufficient to survive dismissal. [Doc. 42 at 5]. This statement is not supported by citations to legal authority or developed argument. *See* [*id.*]. The Court is respectfully unconvinced that simply alleging that a non-party to a contract is an assignee or successor-in-interest, without any factual allegations establishing an assignment or transfer in interest, is sufficient to state a claim.

"An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." *Allstate Ins. Co. v. Med. Lien Mgmt., Inc.*, 348 P.3d 943, 947 (Colo. 2015) (quoting Restatement (Second) of Contracts § 317(1) (1981)). Although "[n]o particular formalities are necessary to effect a valid assignment," the "'intent to make the assignment must be apparent,' and that intent 'may be reflected by the written instruments executed by the parties or . . . inferred from the acts and conduct of the assignor.'" *Phoenix Cap., Inc. v. Dowell*, 176 P.3d 835, 845 (Colo. App. 2007) (quoting *Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs.*, 867 P.2d 70, 73–74 (Colo. App. 1993) (alteration in original)). Here, Plaintiff directs the Court to no factual allegations in the Amended Complaint setting out T&H's "acts and conduct" from which its intent to assign could plausibly be inferred, *see* [Doc. 42 at 5–6], and the Court could not locate any such allegations in its independent

---

[4] These provisions state: "F. **Successors and assigns.** This Agreement will be binding upon Employee's heirs, executors, administrators, and other legal representatives and will be for the benefit of the Company, its successors, and its assigns. G. **Survival.** The provisions of this Agreement shall survive the assignment of this Agreement by the Company to any successor in interest or other assignee." [Doc. 24-1 at 5].

review of the Amended Complaint; indeed, Plaintiff does not even allege the circumstance surrounding the "transitioning" of Ms. Combs's employment to THTBC, which Plaintiff claims was the trigger of the purported assignment, *see* [Doc. 24 at ¶¶ 53, 112]. Nor does Plaintiff meaningfully support its argument that THTBC is a successor-in-interest of the Agreement by virtue of Ms. Combs's employment transition. *See* [Doc. 42 at 5–6].

Alternatively, THTBC argues that the Amended Complaint "plausibly supports enforcement of the Agreement through reformation based on mutual mistake" or a "scrivener's error." [Doc. 42 at 6–7 (emphasis omitted)]. The Court disagrees. Contract reformation is "an equitable remedy" that is "permissible when either the parties made a mutual mistake or one party made a unilateral mistake and the other party engaged in fraud or inequitable conduct." *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1260 (Colo. App. 2008); *see also Dennett v. Mt. Harvard Dev. Co.*, 604 P.2d 699, 701 (Colo. App. 1979) ("[S]criveners' errors are a form of mutual mistake."). Plaintiff's Amended Complaint neither seeks reformation of the Agreement nor expressly alleges the existence of a mistake or a scrivener's error, *see generally* [Doc. 24], and Plaintiff cannot amend its pleading to add new factual allegations or a new request for relief through its Response. *See Earles v. Cleveland*, 418 F. Supp. 3d 879, 892 n.3 (W.D. Okla. 2019), *aff'd*, 825 F. App'x 544 (10th Cir. 2020); *see also* Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief.").

Finally, THTBC argues that Ms. Combs "owes contractual obligations to THTBC through the Employee Handbook." [Doc. 42 at 8 (emphasis omitted)].[5] It asserts that

---

[5] Defendants also argue that the Employee Handbook does not constitute a binding

"Ms. Combs expressly agreed to comply with the provisions listed in the Employee Handbook," which imposed contractual duties on her.  [*Id.* at 9].

This argument is unconvincing for several reasons.  First, the Amended Complaint does not allege that the Employee Handbook is a contract that imposes any duty on Ms. Combs.  *See* [Doc. 24 at ¶¶ 41–49].  Second, and relatedly, Plaintiff's breach of contract claim is based exclusively on allegations that Ms. Combs breached the Agreement—not the Employee Handbook.  [*Id.* at ¶¶ 109–23].   Third, Plaintiff's argument is conclusory and does not explain how the Employee Handbook meets the requirements of a binding contract.  *See Stansberry v. Elkerton*, No. 22CA1715, 2023 WL 12051980, at *2 (Colo. App. Oct. 12, 2023) ("To form a valid contract, there must be an offer, acceptance, and consideration that supports the agreement.").  Plaintiff cannot state a breach of contract claim based on the Employee Handbook.

For these reasons, the Court finds that Plaintiff fails to state a breach of contract claim under Rule 12(b)(6).  Claim One is respectfully **DISMISSED without prejudice**.[6]

## II.    Claims Three and Four:  Trade Secret Misappropriation

To plausibly state a misappropriation claim under CUTSA, a plaintiff must allege "(i) that [the plaintiff] possessed a valid trade secret, (ii) that the trade secret was disclosed

---

contract because the document attached to their Motion "disclaims a contractual relationship" by informing employees that "'[t]his Code is not an employment contract.'" [Doc. 34 at 9 (quoting Doc. 34-1 at 1)].  Plaintiff responds to this argument.  [Doc. 42 at 8–9].  However, because the Court has declined to consider Defendants' exhibit in ruling on the Motion, *see supra* note 2, the Court does not address this argument.

[6] Defendants argue that Plaintiff's claims should be dismissed with prejudice but provides no supporting argument.  [Doc. 34 at 2].  "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  The Court declines to undertake a futility analysis sua sponte and instead dismisses Claim One without prejudice.

or used without consent, and (iii) that the defendant knew, or should have known, that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 847 (10th Cir. 1993). Similarly, a DTSA claim requires allegations establishing:

> (1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means.

*DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1175 (D. Colo. 2019) (quotation omitted).

Under CUTSA, "[t]o be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." Colo. Rev. Stat. § 7-74-102(4). The DTSA contains a similar requirement; information constitutes a "trade secret" if, among other things, "the owner thereof has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(A).

Defendants argue that Plaintiff cannot state a misappropriation claim under either CUTSA or DTSA because it has not alleged that it took reasonable and ongoing measures to keep the information secret. [Doc. 34 at 8]. Defendants contend that the information in question cannot constitute a trade secret because there is no confidentiality agreement in place between the Parties. *See* [*id.* ("[I]n [the] absence [of confidentiality agreements], (1) Ms. Combs lacks any post-employment confidentiality obligations to THTBC, and (2) THTBC lacks trade secret protection.")]. The Court is not persuaded by this argument, which is not supported by any legal authority establishing a categorical rule that there

11

must be some sort of confidentiality or non-disclosure agreement in place for property to obtain trade-secret status.    *See* [*id.* at 8–9].    Defendants have not established that dismissal of the misappropriation claims is warranted, and the Motion to Dismiss is **DENIED** with respect to Claims Three or Four.[7]

### III.    Claim Six:  Civil Theft

#### A.    The Sufficiency of Plaintiff's Allegations

To state a claim of civil theft, "a plaintiff must allege the elements of criminal theft: that the defendant 'knowingly obtain[ed], retain[ed], or exercise[d] control over anything of value of another without authorization or by threat or deception, and act[ed] intentionally or knowingly in ways that deprive[d] the other person of the property permanently.'"  *Scott v. Scott*, 428 P.3d 626, 633 (Colo. App. 2018) (quoting *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016)).  The intent element can be established by showing the defendant's "specific intent to permanently deprive the owner of the benefit of property."  *Van Rees*, 373 P.3d at 608 (quotation omitted).

Defendants contend that Plaintiff's civil theft claim "fails because the [Amended Complaint] does not allege Defendants' intent to permanently deprive Plaintiff of the property."  [Doc. 34 at 9].  They contend that the Amended Complaint's "own allegations demonstrate that THTBC . . . never lost access to any information in its systems" because

---

[7] In their reply brief, Defendants expand on their argument, asserting that Plaintiff alleges only "one-time, general protective measures" to protect Plaintiff's trade secrets, as opposed to *ongoing* protective measures, such as "standard offboarding procedures to secure confidential materials from discharged executives with access to Plaintiff's alleged secrets." *See* [Doc. 48 at 7 (emphasis omitted)].  These arguments attacking the specific sufficiency of Plaintiff's allegations were not meaningfully raised in the Motion to Dismiss, *see* [Doc. 34 at 8–9], and the Court does not consider arguments raised for the first time in a reply brief, *Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 986 (10th Cir. 2020).

(1) Plaintiff does not allege that it lost access to any of the allegedly stolen information; and (2) Plaintiff alleges that Ms. Combs advertised the information as "legally shareable," which "negat[es] specific intent." [*Id.* at 10].

Plaintiff responds by directing the Court to the specific statutory language, which says that "[a] person commits theft when he or she . . . [u]ses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use *or benefit*." Colo. Rev. Stat. § 18-4-401(1)(c) (emphasis added); [Doc. 42 at 11–12]. Plaintiff contends that the inclusion of the language "or benefit" means that a civil theft claim does not arise only when the owner loses physical access to the stolen property. [Doc. 42 at 12]. It further argues that the entire benefit of possessing a trade secret is its value as a secret, and if the secret has been compromised, then the owner of the trade secret can no longer benefit from it. [*Id.* at 12–13].

At the outset, the Court pauses to note that CUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Colo. Rev. Stat. § 7-74-108(1). In other words, "CUTSA preempts common law claims that 'conflict' with its trade secret misappropriation provisions." *Abbott Labs v. Finkel*, No. 17-cv-00894-CMA-KMT, 2017 WL 5517399, at *3 (D. Colo. Nov. 17, 2017) (citing *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996)). "[I]f a common law claim is no more than a restatement of the same operative facts which would plainly and exclusively spell out trade secret misappropriation, preemption is appropriate." *Id.*

Plaintiff's emphasis on the *trade secret value* of the alleged stolen information

13

suggests to this Court that Plaintiff's civil theft claim may be nothing more than a restatement of its CUTSA claim. But because this case is still in its early stages, there has been no determination that the information at issue actually amounts to a trade secret, *see Cypress Advisors, Inc. v. Davis*, No. 16-cv-01935-MSK-MEH, 2019 WL 1242331, at *5 (D. Colo. Mar. 18, 2019) ("Courts in Colorado have found that CUTSA did <u>not</u> preempt a civil theft claim where the civil theft claim was premised upon the theft of items that were <u>not</u> trade secrets."), and Defendants do not seek dismissal on this basis, *see* [Doc. 34 at 9–10], the Court declines to sua sponte address preemption.

As for Defendants' argument, the Court is unpersuaded by it. Relying on the Tenth Circuit case of *Seale v. Peacock*, Defendants contend that because Plaintiff does not allege that it lost access to the allegedly stolen electronic information, it cannot state a civil theft claim. *See* [*id.*]. In *Seale*, the plaintiff alleged that the defendant had improperly accessed the plaintiff's client-management software account, which contained the plaintiff's confidential information. 32 F.4th 1011, 1017, 1028 (10th Cir. 2022). The Tenth Circuit concluded that the plaintiff failed to state a claim for civil theft because he did not allege that the defendant "intended to permanently deprive him of property and its benefit" because "[a]ccessing and viewing electronic information that remains accessible to the information's rightful owner cannot amount to a permanent deprivation of property." *Id.* at 1028.

But the Colorado Court of Appeals recently explained that "to be liable for civil theft, it is only required that the defendant knowingly exercise unauthorized control over the property, with one of the requisite intents; *it is not necessary that she maintain absolute control for her own personal use*." *Dogwood Realty Grp. Tr. v. Tew*, No. 24CA0772, 2025

14

WL 1702943, at \*3 (Colo. App. June 18, 2025) (cleaned up and emphasis added). Indeed, to read *Seale* to hold that there can be no intent to deprive so long as electronic data is still available to the owner, *see* [Doc. 34 at 10], ignores the realities of the transferability of electronic information that have been commonplace for decades. *Cf. Bermel v. Blueradios, Inc.,* No. 2014CV032139, 2015 WL 10013672, at \*4 (Colo. Dist. Ct. Dec. 7, 2015) ("[A]lthough [plaintiff] still has copies or perhaps originals of the confidential and proprietary information, [defendant's] compromise of the proprietary and confidential information negatively affects both the value of the proprietary and confidential information, and the value of [plaintiff] as an ongoing entity."), *aff'd in relevant part, rev'd in part*, 442 P.3d 923 (Colo. App. 2017), *aff'd and remanded*, 440 P.3d 1150 (Colo. 2019).

And here, and unlike *Seale*, Plaintiff alleges more than the simple access or viewing of electronic information: THTBC alleges that Ms. Combs "obtained and retained" THTBC's "confidential . . . information" and "used, disclosed, or planned to use or disclose[] for or to Combs Consulting's clients." [Doc. 24 at ¶¶ 93, 175]; *see also* [*id.* at ¶¶ 72–79, 93–100 (describing the allegedly stolen confidential information)]. THTBC also alleges that "Ms. Combs has continued using [THTBC's] confidential and trade secret information in her work for CBRE," [*id.* at ¶ 107], and has asserted other allegations suggesting that Ms. Combs used Plaintiff's confidential information for her own benefit and to Plaintiff's detriment, *see* [*id.* at ¶¶ 93, 102–04].

To be sure, Plaintiff's allegations are not robust. But they are sufficient, at the pleading stage, to plausibly allege that Defendants used Plaintiff's confidential information with the intent to permanently deprive Defendants of the information's benefit. *See DTC Energy Grp.*, 420 F. Supp. 3d at 1181 (concluding that the plaintiff stated a civil theft claim

where it alleged that the defendant improperly accessed and used the plaintiff's confidential information for competitive purposes to benefit his new employer, which the court "infer[red]" could deprive the plaintiff of the benefit of the confidential documents). As for Defendants' argument that Plaintiff cannot allege Ms. Combs's intent to deprive because she advertised the allegedly stolen information as "legally shareable," [Doc. 34 at 10], this argument requires the Court to construe Plaintiff's allegations in Defendants' favor, which the Court cannot do, *Casanova*, 595 F.3d at 1124 (10th Cir. 2010).  The Court will not dismiss Claim Six, and the Motion to Dismiss is **DENIED** to the extent it seeks dismissal of this claim.

### B.    Defendant's Erroneous Citation

In seeking dismissal of Claim Six, Defendants attribute the following language to the decision of *Seale v. Peacock*, 32 F.4th at 1028:  "accessing and viewing electronic information without authorization, where that information remains accessible to the rightful owner, cannot constitute civil theft under Colorado law because it fails to establish the required element of intent to permanently deprive the owner of property."  *See* [Doc. 34 at 9].  That quote does not appear in *Seale* or any other case, and for the reasons stated above, overstates the holding in *Seale* by suggesting the existence of a per se rule. Rather, the *Seale* opinion states:  "Accessing and viewing electronic information that remains accessible to the information's rightful owner cannot amount to a permanent deprivation of property."  *Seale*, 32 F.4th at 1028.

The Court also notes that Defendants' Motion contains the following AI Certification from defense counsel:  "The undersigned counsel certifies that generative artificial intelligence—specifically, Eve Legal—was used to draft this filing.  I further certify that

Defendants were advised of and consented to such use.  All cited authority was manually reviewed by counsel of record."  [Doc. 34 at 12].

While the quotation appearing in Defendants' Motion is not substantially different from the actual language contained in *Seale*, defense counsel's incorrect attribution of the quoted language to *Seale* is nevertheless a misrepresentation to the Court—and a troubling one, in light of counsel's acknowledgement that she used generative artificial intelligence in her preparation of the brief and her certification that she "manually reviewed" all cited authority.   All attorneys appearing before this Court have a "fundamental duty" to ensure that they are "accurately quoting from the cited authorities." *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016, at *7 (10th Cir. Feb. 9, 2026); *see also Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) ("At the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely.").  This Court is concerned that counsel attributed an inaccurate quotation to *Seale* despite certifying that she "manually reviewed" all cited authority.

Accordingly, it is **ORDERED** that, no later than **June 23, 2026**, Marianna McLean **SHALL SHOW CAUSE**, in writing, (1) why the inclusion of an inaccurate quotation in the Motion to Dismiss does not amount to a violation of Rule 11(b) of the Federal Rules of Civil Procedure, and (2) why she should not be sanctioned under Rule 11 and/or the Court's inherent authority under 28 U.S.C. § 1927.

## IV.    Claim Seven:  CCPA Claim

"The Colorado Consumer Protection Act . . . is a broad remedial statute 'intended to deter and punish deceptive trade practices committed by businesses in dealing with

the public.'" *Examination Bd. of Pro. Home Inspectors v. Int'l Ass'n of Certified Home Inspectors*, 519 F. Supp. 3d 893, 919 (D. Colo. 2021) (quoting *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175 (D. Colo. 2002)), *aff'd*, 36 F.4th 1238 (10th Cir. 2022).  To state a claim under the CCPA, a plaintiff must allege:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003).  "[I]f a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA."  *Id.* at 149.  In deciding whether challenged conduct significantly impacts the public for purposes of the CCPA, courts consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) [allegations] that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future."  *Id.*

Defendants argue that the CCPA claim should be dismissed because Plaintiff does not allege a significant public impact; rather, both Plaintiff and Defendants "aim their services at a single consumer—the federal government."  [Doc. 34 at 11 (citing Doc. 24 at ¶¶ 10, 90, 180, 198)].  While this argument is not robust,[8] the Court agrees with it.  In

---

[8] Defendants again expand their argument in their reply brief.  *Compare* [Doc. 34 at 11 (asserting a three-sentence argument that Plaintiff did not allege a public impact)], *with* [Doc. 48 at 10–11 (significantly expanding this argument by making more developed arguments and addressing the *Rhino Linings* factors for the first time)].  The Court does not consider these arguments.  *Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 986 (10th Cir. 2020).  <u>All Parties are specifically advised that, going forward, they must</u>

its Response, Plaintiff contends that Defendants' argument "mischaracterizes the factual allegations in the [Amended Complaint], the relevant case law, and the nature of THTBC's claim." [Doc. 42 at 14]. But tellingly, while Plaintiff points the Court to allegations about Defendants' alleged wrongful trade practices, [*id.* (citing Doc. 24 at ¶¶ 88–91, 193–94, 201)], allegations explaining why Defendants' misrepresentations were deceptive, [*id.* at 14–15 (citing Doc. 24 at ¶¶ 91–93)], and allegations in which Plaintiff "identified with specificity the provisions of the [CCPA] Defendants violated," [*id.* at 15 (citing Doc. 24 at ¶ 195)], Plaintiff fails to point the Court to *any* allegations plausibly establishing that Defendants' actions had a significant public impact. *See* [*id.* at 14–15].

At best, Plaintiff argues that Defendants "created and operated a public website," [*id.* at 14], which might be broadly construed as an argument that Defendants' actions had a significant public impact. But Plaintiff cites no legal authority that deceptive statements appearing on a "public website" necessarily create a significant public impact, *see* [*id.*], and the Court declines to hold that simply placing a deceptive statement on the internet—no matter how many people see or rely on the statement—necessarily *and significantly* impacts the public. Moreover, Plaintiff does not address the *Rhino Linings* factors relevant to determining whether a challenged practice has a significant public impact on the public as consumers of Defendants' goods, *see* [*id.* at 14–15]; *see also Rhino Linings*, 62 P.3d at 149, and the Amended Complaint contains only vague allegations that an unspecified number of unidentified "clients" may have been deceived by Defendants' statements, *see* [Doc. 24 at ¶¶ 100–02, 193]. These allegations are

---

*meaningfully* raise all arguments they want the Court to consider in their affirmative motions rather than waiting to develop their arguments in their reply briefs.

19

insufficient to plausibly allege that Defendants' conduct "significantly impact[ed] the public as actual or potential consumers of" Defendants' services. *Rhino Linings*, 62 P.3d at 147; *see also Vickerie v. Diversified Inv. Holdings, Inc.*, No. 19-cv-03256-REB-KMT, 2020 WL 9432908, at *7 (D. Colo. Nov. 13, 2020) (finding "conclusory" allegations that the defendants' "actions impact the potential and actual consumers of its products and services" and "other similarly situated customers have been injured by [the defendants'] unfair and deceptive trade practices" were insufficient to state a claim), *recommendation adopted*, 2021 WL 1753514 (D. Colo. Mar. 26, 2021).

The Court concludes that Plaintiff has not alleged that the challenged conduct significantly impacts the public as actual or potential consumers of Defendants' services and has thus not alleged an essential element of its CCPA claim. The Motion to Dismiss is **GRANTED** with respect to Claim Seven, which is **DISMISSED without prejudice**.

### CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)    The Partial Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 34] is **GRANTED in part** and **DENIED in part**;

(2)    Claims One and Seven are **DISMISSED without prejudice**; and

(3)    No later than **June 23, 2026**, Marianna McLean **SHALL SHOW CAUSE**, in writing, (1) why the inclusion of an inaccurate quotation in the Motion to Dismiss does not amount to a violation of Rule 11(b) of the Federal Rules of Civil Procedure, and (2) why she should not be sanctioned under Rule 11 and/or the Court's inherent authority under 28 U.S.C. § 1927.

DATED:  June 9, 2026                     BY THE COURT:

_____
Nina Y. Wang
United States District Judge